1  GEORGE S. CARDONA
   Acting United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   DOROTHY C. KIM (Cal. State Bar. No. 206333)
4  Assistant United States Attorney
        1100 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-3779
        Facsimile: (213) 894-6269
7       E-Mail: dorothy.kim@usdoj.gov

8
   Attorney for Plaintiff
9  United States of America

10
                  UNITED STATES DISTRICT COURT
11
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
13  UNITED STATES OF AMERICA,        ) No. CR 04-374-SJO
                                     )    CV 07-4160-SJO
14               Respondent,         )
                                     )
15          v.                       ) GOVERNMENT'S OPPOSITION TO
                                     ) DEFENDANT'S MOTION UNDER 28
16  RITA MARIE LAVELLE,              ) U.S.C. § 2255
                                     )
17               Petitioner.         ) No Hearing Date Set
                                     )
18  _____  )
                                     )
19

20        Plaintiff-respondent United States of America, through its

21  counsel of record, Assistant United States Attorney Dorothy C.

22  Kim, hereby files its opposition to defendant-petitioner Rita

23

24

25

26

27

28

Marie Lavelle's motion to vacate, set aside, or correct her sentence.

Dated: February 3 , 2010          Respectfully submitted,

                                  GEORGE S. CARDONA
                                  Acting United States Attorney

                                  CHRISTINE C. EWELL
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____
                                  DOROTHY C. KIM
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  United States of America

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . .  ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . .  1

II.  PROCEDURAL HISTORY AND RELEVANT FACTS  . . . . . . . . .  1

     A.   Defendant's Criminal Conduct  . . . . . . . . . .  1

     B.   Indictment and First Superseding Indictment . . . . .  4

     C.   Trial . . . . . . . . . . . . . . . . . . . . . .  4

     D.   Sentencing  . . . . . . . . . . . . . . . . . . .  7

     E.   First Appeal  . . . . . . . . . . . . . . . . . .  9

     F.   Ameline Remand  . . . . . . . . . . . . . . . . .  9

     G.   Second Appeal . . . . . . . . . . . . . . . . . .  9

     H.   2255 Motion . . . . . . . . . . . . . . . . . . .  9

III. ARGUMENT  . . . . . . . . . . . . . . . . . . . . . .  10

     A.   Standard For Evaluating Defendant's Claim . . . . .  10

     B.   Defendant Cannot Demonstrate That Her Counsel Was

          Constitutionally Ineffective  . . . . . . . . . .  13

          1.   Vulnerable Victim Enhancement . . . . . . . .  13

          2.   Cross-Examination of Chavez and Sanford . . . .  18

          3.   Defendant's Testimony . . . . . . . . . . . .  19

          4.   Signed Copy of Indictment . . . . . . . . . .  22

IV.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . .  23

-i-

1

<u>TABLE OF AUTHORITIES</u>

2

3   <u>CASES</u>:                                               PAGE(S)

4

5   <u>Bittaker v. Woodford</u>,
       331 F.3d 715 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

6   <u>Denham v. Deeds</u>,
       954 F.2d 1501 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . .   12, 22

7

8   <u>Hensley v. Crist</u>,
       67 F.3d 181 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

9   <u>Jones v. Barnes</u>,
       463 U.S. 745 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

10

11   <u>Kimmelman v. Morrison</u>,
       477 U.S. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

12   <u>Rock v. Arkansas</u>,
       483 U.S. 44 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

13

14   <u>Strickland v. Washington</u>,
       466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

15   <u>Wainwright v. Sykes</u>,
       433 U.S. 72 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

16

17   <u>White v. Sanford</u>,
       142 F.2d 429 (5th Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . .   22

18   <u>United States v. Ameline</u>,
   376 F.3d 967 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

19

20   <u>United States v. Ameline</u>,
       409 F.3d 1073 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . .   9

21   <u>United States v. Booker</u>,
       543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

22

23   <u>United States v. Bosch</u>,
       914 F.2d 1239 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . .   12

24   <u>United States v. Claiborne</u>,
       870 F.2d 1463 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . .   11

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

United States v. Hicks,
    217 F.3d 1038 (9th Cir. 2000) ......................... 15

United States v. Quintero-Barraza,
    78 F.3d 1344 (9th Cir. 1995) ......................... 11

United States v. Wolfson,
    634 F.2d 1217 (9th Cir. 1980) ......................... 19

**STATUTES:**

18 U.S.C. § 1001(a) ....................................... 4

18 U.S.C. § 1343 .......................................... 4

18 U.S.C. § 3553(a) ....................................... 17

28 U.S.C. § 2255 ....................................... 1, 9, 10

**RULES:**

Fed. R. Evid. 902(11) ..................................... 18

**SENTENCING GUIDELINES:**

U.S.S.G. § 3A1.1 n2 ................................... 6, 7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

INTRODUCTION

On June 26, 2007, defendant-petitioner Rita Marie Lavelle ("defendant") filed a motion to vacate her sentence under 28 U.S.C. § 2255. (CR CR 168)[1]. In that motion, defendant claimed that her counsel was ineffective in a number of respects. For the reasons set forth below, the government submits that defendant's counsel was not ineffective and respectfully requests that this Court deny defendant's motion.

II.

PROCEDURAL HISTORY AND RELEVANT FACTS[2]

A.   Defendant's Criminal Conduct

Defendant owned a business called NuTECH Enterprises, Inc., which operated as an environmental consulting company. (PSR ¶ 13). Co-defendant, Robert Virgil Cole, owned a business called DeNova Environmental, Inc., a hazardous waste storage and transfer facility. (PSR ¶ 14). Joseph Bertelli owned a business called Lemco Corporation. (PSR ¶ 15). At the time of defendant's criminal conduct, Bertelli was 80 years old and had

---

[1]"CR CR" refers to the Clerk's Record in the criminal case and is followed by the applicable document control number. "CV CR" refers to the Clerk's Record for the civil case and is followed by the applicable document control number.

[2]Defendant's motion contains a section entitled "Historical Factual Background." (Def's Mot. 5-13). This section, however, does not include any citations to the record. It also includes numerous incorrect statements. The government does not correct every inaccuracy but responds to misstatements as necessary for purposes of this opposition.

undergone treatment for mouth cancer. (Id.). Bertelli hired
defendant as a consultant. Capital Partners was a factoring
company that advanced monies to clients in exchange for the right
to collect clients' accounts receivables. (PSR ¶ 16).

Defendant and Cole devised a plan whereby they would obtain
money for defendant and, at the same time, satisfy a debt that
DeNova owed to defendant and NuTECH. (PSR ¶ 18). Defendant and
Cole agreed to make it appear that Lemco owed DeNova over
$52,000, and to assign this alleged debt to Capital Partners in
return for an advance that would be sent to defendant. (PSR
¶¶ 17-19).

On August 28, 2000, defendant sent a letter to Capital
Partners, which attached a number of documents that defendant
falsely stated "had been signed" by Bertelli and which made it
appear that Bertelli owed DeNova $52,130. (PSR ¶ 20). Defendant
additionally provided Capital Partners with Bertelli's social
security number and bank account information so that Capital
Partners would be able to access the bank account that Bertelli
had purportedly offered as security for the purported debt.
Bertelli, however, had never signed any of these documents and
had never discussed with defendant any purported debt or
guaranteeing a $52,130 payment to DeNova. (9/23/04 RT 62-67;
Exh. C 80-85).

Based on the purported personal guarantee of Bertelli,
Capital Partners approved a $36,441 advance to DeNova. (9/22/04
RT 138-39; Exh. B 48-49). At the direction of Cole and

defendant, Capital Partners wired the proceeds of the advance, interstate, to defendant's Wells Fargo bank account.  (9/22/04 RT 108-09; 141-42; Exh. B 46-47, 51-52).

On February 26, 2001, defendant admitted to Federal Bureau of Investigation ("FBI") Special Agent Annette Freihon that she had signed Bertelli's name on various documents that she had sent to Capital Partners.  (9/23/04 RT 46-47; Exh. C 75-76).

On October 17, 2002, after defendant learned that she was the target of an investigation, she requested another interview with Special Agent Freihon.  During that interview, defendant changed her story and told Special Agent Freihon that when she received money from Capital Partners, in August 2000, she did not know which accounts receivable Capital Partners was factoring. (9/23/04 RT 52; Exh. C 77).  Defendant further stated that she only learned about the fraudulent scheme -- which she attributed to DeNova -- after November 2000, when Bertelli showed defendant a Capital Partners invoice.  (9/23/04 RT 53; Exh. C 78).

Following the interview, defendant prepared a written declaration.  (Id.).  Defendant wrote that she did not give Capital Partners any documents until "after the problem emerged." As defendant explained to Special Agent Freihon, by "after the problem emerged," defendant meant after Bertelli had received a Capital Partners invoice.  (9/23/04 RT 59; Exh. C 79).

On September 10, 2003, and October 8, 2003, at defendant's request, she testified before the grand jury.  (9/23/04 RT 10-23; Exh. C 56-69).  During that testimony, parts of which were read

3

1  into the record at trial, defendant admitted that she had signed

2  Bertelli's name on a purchase order.  (9/23/04 RT 28; Exh. C 70).

3  Defendant also admitted that she may have signed Bertelli's name

4  to other documents that she had sent to Capital Partners.

5  (9/23/04 RT 33-34; Exh. C 71-72).

6  B.   Indictment and First Superseding Indictment

7       On April 7, 2004, a federal grand jury returned an

8  indictment charging defendant and co-defendant Robert Virgil Cole

9  with one count of wire fraud, in violation of 18 U.S.C. § 1343;

10 and defendant with two counts of making false statements, in

11 violation of 18 U.S.C. § 1001(a).  (CR CR 1).  On July 28, 2004,

12 a federal grand jury returned a first superseding indictment that

13 charged sentencing factors as "additional allegations."  The

14 first superseding indictment charged, in count one, that the loss

15 amount exceeded $30,000 and that one of the victims to

16 defendant's crimes was unusually vulnerable.  (CR CR 52; attached

17 Exh. A).  The indictment that was filed with the clerk's office

18 contained the signature of the grand jury foreperson.  (Id.).

19 C.   Trial

20      On September 21, 2004, a jury trial commenced against

21 defendant.  (CR CR 98).  Joseph Bertelli testified at trial.

22 Bertelli appeared in a wheelchair and had "significant

23 impairments."  (9/22/04 RT 57; Exh. B 36).  Among other things,

24 Bertelli had "significant difficulty" in raising his hand.

25 (9/22/04 RT 58; Exh. B 37).  At the time of his testimony,

26 Bertelli was 84 years old.  (9/22/04 RT 67; Exh. B 38).  Bertelli

27

28                                   4

testified that in 1999, prior to the wire fraud charged in the
indictment, he had mouth cancer which resulted in surgery to
remove the cancer. (9/22/04 RT 67-68; Exh. B 38-39).  Indeed, at
the time of trial, Bertelli had trouble speaking because his jaw
had been removed.

Cynthia Chavez, a paralegal at Wells Fargo Bank testified at
trial.  She testified as a custodian of records regarding the
authenticity of certain bank documents.  (9/22/04 RT 76-77; Exh.
B 40-41).  These bank documents demonstrated that on August 22,
2000, defendant had a zero balance in her Wells Fargo account.
(9/22/04 RT 77; Exh. B 41).  The bank documents also demonstrated
that on August 30, 2000, the Bank of Stockton wired $36,441 from
Capital Partner's account into defendant's Wells Fargo bank
account.  (Id.).  On cross-examination, defense counsel elicited
that one of the bank records did not contain the notation "Fed
wire" next to the August 30, 2000 transfer of funds.  (9/22/04 RT
83-84; Exh. B 42-43).  Counsel apparently intended to suggest
that there was some question as to how $36,441 moved from one
bank account to another.  On redirect, Chavez clarified that the
August 30, 2000 transfer of funds occurred through a wire
transfer.  (9/22/04 RT 85; Exh. B 44).

Kelly Sanford, who was employed by the Federal Reserve Bank
in Kansas City, also testified at trial.  (9/22/04 RT 107; Exh. B
45).  Sanford testified about Exhibit 75, a document that
demonstrated that on August 30, 2000, the Bank of Stockton wired
money from Capital Partner's bank account to the defendant's

Wells Fargo account, and that the wiring of such funds traveled through East Rutherford, New Jersey. (9/22/04 RT 108-09; Exh. B 46-47).

At the close of the government's case-in-chief, defense counsel moved, under Fed. R. Crim. Proc. 29, to dismiss all three counts of the indictment. (9/23/04 RT 119-21; Exh. C 86-88). The Court denied the motion.

Defendant testified at trial. Although defendant had admitted, before the grand jury, to signing Bertelli's name to various documents she submitted to Capital Partners, at trial, she changed her testimony and stated that Bertelli had actually signed some of the documents himself. (9/23/04 RT 177-78; Exh. C 89-90). Defendant then modified her response and testified that because Bertelli was in poor health, defendant sometimes signed documents for him, but only after discussing such documents with Bertelli. (9/23/04 RT 185; Exh. C 92).

In charging the jury, the Court delivered the following instruction, among others:

> The term 'vulnerable victim' means a person who is a victim of the offense of conviction and who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.

(9/24/04 RT 32; Exh. D 97). This instruction was taken directly from the sentencing guidelines. USSG § 3A1.1 n.2.

On September 27, 2004, following five days of trial, the jury convicted defendant on all three counts of the first superseding indictment and found each of the sentencing

6

1  allegations to be true.  (CR 102).  On October 4, 2004, defendant

2  filed a written Rule 29 motion to dismiss all three counts of the

3  indictment.  (CR CR 110).  The Court denied that motion.

4  D.  <u>Sentencing</u>

5      The Presentence Report ("PSR") was disclosed to the parties

6  on December 13, 2004.  It applied the November 1, 2001 edition of

7  the Sentencing Guidelines, the guidelines that applied to

8  defendant's false statement counts.  (PSR ¶ 35).  It concluded

9  that defendant's base offense level was 6, under USSG § 2B1.1(a).

10 (PSR ¶ 37).  It then applied a 6-level increase for the loss

11 amount, under USSG § 2B1.1(b)(1)(D) (PSR ¶ 38), and a 2-level

12 vulnerable-victim enhancement, under USSG § 3A1.1(b)(1) (PSR

13 ¶ 40).  The PSR calculated defendant's total offense level to be

14 14.  (PSR ¶ 42).  Because defendant's total offense level would

15 have been 14 under the November 1, 2000 edition of the Sentencing

16 Guidelines, the guidelines that would apply to defendant's wire

17 fraud conviction, the PSR concluded that the application of the

18 November 1, 2001 edition of the guidelines did not raise any <u>ex</u>

19 <u>post facto</u> issues.  (PSR ¶ 35).  Indeed, under the November 1,

20 2000 edition of the Guidelines, defendant's base offense level

21 would have been 6, under USSG § 2F1.1(a).  Defendant would have

22 received a 4-level enhancement for amount of loss, under USSG

23 § 2F1.1(b)(1)(E), a 2-level enhancement for a scheme to defraud

24 more than one victim, under USSG § 2F1.1(b)(2), and a 2-level

25 vulnerable-victim enhancement, under USSG § 3A1.1(b)(1).

26     The government submitted its sentencing position in which it

27

28                                    7

1  agreed with the calculations set forth in the PSR.  (CR 123).

2       On December 20, 2004, defendant filed her sentencing

3  position in which she argued that the November 2000 Guidelines

4  should apply to her sentence.  (CR CR 121).  Defendant

5  additionally argued that under that version of the Guidelines,

6  neither the multiple victim enhancement nor the vulnerable victim

7  enhancement should apply.  (Id.).  According to defendant, only

8  Capital Partners and not Bertelli was a victim of her fraudulent

9  scheme.  (Id.).  Defendant additionally moved for a downward

10  departure in her sentence.  (Id.).

11       At the sentencing hearing, the Court expressly stated that

12  it believed there was more than one victim to defendant's crime,

13  namely, Capital Partners and Bertelli.  (1/10/05 RT 18-19; Exh. E

14  128-29).  It also concluded, based upon its observation of

15  Bertelli at trial, that Bertelli was a vulnerable victim within

16  the meaning of USSG § 3A1.1.  (1/10/05 RT 19; Exh. E 129)(stating

17  "it was clear to the Court, at the time of trial, at least, that

18  Mr. Bertelli was in an extremely delicate state;" and "I think it

19  was obvious to the jury, it's obvious to the Court, that Mr.

20  Bertelli was and is a vulnerable victim.  He qualifies as such;

21  therefore, the Court would conclude that it would also apply.").

22  The Court therefore concluded that the application of the

23  November 1, 2001 Guidelines did not raise any ex post facto

24  issues.  The Court calculated defendant's total adjusted offense

25  level to be 14 and defendant's criminal history category to be I,

26  resulting in a guideline range of 15-21 months.  (1/10/05 RT 20;

27

28                                8

Exh. E 130).  The Court sentenced defendant to 15 months.
(1/10/05 RT 21; Exh. E 131).

E.   First Appeal

     On January 19, 2005, defendant filed her first notice of
appeal.  (CR CR 138).  On appeal, defendant argued that the
district court erred in its application of the Sentencing
Guidelines.  Defendant also argued that the Court had erred in
failing to deliver to the jury additional instructions regarding
the sentencing enhancements.

     On August 25, 2005, the Court of Appeals affirmed
defendant's sentence, in part, finding that the district court
correctly applied the Sentencing Guidelines.  It ordered a
limited remand under United States v. Ameline, 409 F.3d 1073 (9th
Cir. 2005) (en banc).

F.   Ameline Remand

     On March 24, 2006, the Court ruled that it would not have
imposed a materially different sentence had it known the
Sentencing Guidelines were advisory.  (CR 176).

G.   Second Appeal

     On March 30, 2006, defendant filed her second notice of
appeal.  (CR CR 181).  On appeal, defendant argued that the Court
erred in failing to provide a sufficient explanation of its
reasons for not imposing a materially different sentence.

H.   2255 Motion

     On June 26, 2007, defendant filed the instant motion to
vacate her sentence under 28 U.S.C. § 2255.  (CR CR 188).   On

9

1  August 31, 2007, the government filed a motion to stay the

2  proceedings until defendant's pending appeal was resolved.  (CV

3  CR 4).  On September 26, 2007, the Court ordered that the motion

4  be stayed.  (CV CR 5).  The Court further ordered that "[t]o lift

5  the stay, [defendant] must file with the Court a copy of the

6  order resolving her appeal."  (Id.).  On October 21, 2008, the

7  Court of Appeals affirmed defendant's sentence.

8                                 III.

9                               ARGUMENT

10      Defendant argues that her trial counsel was ineffective at

11  trial and sentencing because counsel: (1) failed adequately to

12  challenge the Court's application of the vulnerable victim

13  enhancement; (2) inadequately cross-examined two witnesses,

14  Cynthia Chavez and Kelly Sanford; (3) improperly permitted

15  defendant to testify at trial; and (4) failed to object to the

16  government's failure to produce to defendant a copy of the

17  indictment signed by the grand jury foreperson.  For the reasons

18  set forth below, none of defendant's claims have merit and each

19  should be dismissed by this Court.

20  A.  Standard For Evaluating Defendant's Claim

21      The standard for evaluating a Sixth Amendment ineffective

22  assistance of counsel claim is set forth in Strickland v.

23  Washington, 466 U.S. 668 (1984).  A defendant claiming

24  ineffective assistance of counsel bears the burden of

25  demonstrating that, under all the circumstances of her case,

26  (1) "[her] counsel's performance was so deficient that it fell

27

28                                 10

below an 'objective standard of reasonableness,'" <u>Hensley v.</u>
<u>Crist</u>, 67 F.3d 181, 184-85 (9th Cir. 1995) (quoting <u>Strickland</u>,
466 U.S. at 688), and (2) her counsel's deficient performance
prejudiced her, meaning "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different." <u>Id.</u> (emphasis in
original)(quoting <u>Strickland</u>, 466 U.S. at 694).

        As to the first prong of <u>Strickland</u>, courts reviewing the
reasonableness of an attorney's conduct must examine the
attorney's "overall performance," and must be highly deferential
to the attorney's judgments. <u>Strickland</u>, 466 U.S. at 688-89.
There exists a "strong presumption that counsel rendered adequate
assistance and made all significant decisions in the exercise of
reasonable professional judgment." <u>United States v. Quintero-</u>
<u>Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995) (internal quotations
omitted). "[T]he defendant must surmount the presumption, that
under the circumstances, the challenged action 'might be
considered sound trial strategy.'" <u>Id.</u> at 1348 (quoting
<u>Strickland</u>, 466 U.S. at 689). "The reasonableness of counsel's
performance is to be evaluated from counsel's perspective at the
time of the alleged error and in light of all the circumstances,
and the standard of review is highly deferential." <u>Kimmelman v.</u>
<u>Morrison</u>, 477 U.S. 365, 381 (1986). As the court explained in
<u>United States v. Claiborne</u>, 870 F.2d 1463, 1468 (9th Cir. 1989),
"[i]n applying the first prong, it is clear that a reviewing
court is not free to engage in after-the-fact second-guessing of

strategic decisions made by defense counsel.  Instead, judicial scrutiny of 'counsel's performance must be highly deferential.'" (quoting Strickland, 466 U.S. at 689).

Even if a defendant is able to satisfy the first prong, she must then establish that the deficient performance prejudiced her defense by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  To sustain her burden, a defendant is required to show that her counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992).

A defendant who fails to satisfy either the deficient performance or the prejudice prong of the Strickland test has failed to make out a claim for ineffective assistance of counsel. Strickland, 466 U.S. at 697; United States v. Bosch, 914 F.2d 1239, 1244 (9th Cir. 1990).  Here, defendant can satisfy neither prong of Strickland.[3]

---

[3]Defendant's ineffective assistance of counsel claim results in a waiver of the attorney-client privilege as to communications with her former counsel relevant to the ineffective assistance claim.  In light of Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003), however, the procedures required to define the contours of the appropriate waiver and implement it with the required limitations could significantly delay proceedings in this case.  For the reasons set forth below, the government believes that defendant's ineffective assistance of counsel claim can be resolved against defendant without disclosure of communications between defendant and her former counsel, and so without the need

B.   Defendant Cannot Demonstrate That Her Counsel Was
      Constitutionally Ineffective

              1.   *Vulnerable Victim Enhancement*

     Defendant argues that her trial counsel was ineffective at
sentencing because he: (1) failed to file a Rule 29 motion to
dismiss the vulnerable victim enhancement; (2) admitted during
closing argument that Bertelli was a cancer victim; and (3)
failed to request special jury instructions defining "vulnerable
victim." (Def's Mot. 14-15).[4]  According to defendant, had her
lawyer been more effective, the two-level vulnerable victim
enhancement would not have applied to her sentencing.
Defendant's claims are not supported by the record or case law.

     First, although defendant complains that her lawyer failed
to move, under Rule 29, to dismiss the vulnerable victim

_____

for the parties and the Court to engage in the time-consuming
procedures required to disclose those communications.  If the
Court disagrees, and believes that examination of the
communications between defendant and her former counsel are
necessary to resolution of defendant's ineffective assistance of
counsel claim, the government requests that the Court find a
limited waiver of the attorney-client privilege and permit the
government to submit a filing setting forth procedures for
implementing the waiver and requesting a briefing schedule for
further addressing defendant's ineffective assistance claim.


     [4]Defendant additionally claims that defense counsel was
ineffective in failing to request a special jury instruction
defining "multiple victim." (Def's Mot. 15).  The indictment,
however, did not charge defendant with defrauding multiple
victims.  Instead, the multiple victim enhancement was only
relevant to determining whether the application of the 2001
Guidelines raised any ex post facto issues.  Since defendant had
not been charged with defrauding multiple victims, it would have
been nonsensical to request a jury instruction regarding this
sentencing enhancement.

                              13

enhancement, a review of the record demonstrates that counsel
moved twice to dismiss all counts of the indictment, including
count one, which included the enhancement.  (9/23/04 RT 119-21;
Exh. C 86-88; CR CR 110).  Similarly, although defendant
complains that her lawyer admitted during closing argument that
Bertelli was "a cancer victim" (Def's Mot. 15), a review of the
entirety of defense counsel's closing argument demonstrates that
counsel made no such mention of cancer.  (9/24/04 RT 53-79; Exh.
D 98-125).[5]  Finally, defendant's complaint that her counsel was
ineffective in failing to request a specific jury instruction
defining vulnerable victim, ignores that the Court in fact
delivered a jury instruction defining that term.  The record
therefore does not support defendant's complaints regarding her
counsel's performance at sentencing.

     The government therefore will construe defendant's argument
as one claiming that counsel should have done more, _i.e._, that
counsel: (1) should have tailored his Rule 29 motion to focus on
the vulnerable victim sentencing enhancement; (2) should have
vigorously contested Bertelli's poor health and undisputed age
during closing argument; and (3) should have requested additional
jury instructions regarding "vulnerable victim."  Even so
construed, defendant's argument fails the first prong of
Strickland.

     A review of the record demonstrates that each of the

---

     [5]The only reference that counsel made during closing
argument to Bertelli's health was that "we know he had serious
health problems four years ago."  (9/24/04 RT 61; Exh. D 106).

decisions about which defendant now complains can be deemed the
exercise of sound trial strategy.  First, defense counsel's
decision to focus his zealous Rule 29 motions on the actual
counts of conviction rather than the sentencing enhancement was
reasonable.  Had the Court granted the Rule 29 motion, it would
necessarily have entered a judgment of acquittal on all counts of
conviction, including count one.  Moreover, the evidence
overwhelmingly demonstrated that Bertelli was vulnerable.
Bertelli testified about his age and physical condition.  The
jury observed Bertelli at trial.  Even defendant admitted during
her testimony that Bertelli was in poor health at the time of the
events at issue.  Indeed, she used it as an excuse to explain why
she would have signed certain documents for him.  Defense counsel
therefore acted reasonably in not arguing that there was
insufficient evidence to support this uncontroversial fact.

Similarly, defendant's failure to request any additional
instructions regarding the vulnerable victim enhancement cannot
be deemed objectively unreasonable since the Court had already
defined that term for the jury.  Accordingly, no other
instruction was necessary.  It is well established that "the
district court need not define common terms that are readily
understandable by the jury." United States v. Hicks, 217 F.3d
1038, 1045 (9th Cir. 2000)(holding that district court did not
need to define the terms "false" or "statement" and collecting
cases discussing terms that need not be defined, including
"commercial advantage," "private financial gain," "violence,"

15

"organizer," "supervisor," and "manager"). Here, no further definition of the terms "vulnerable" of "victim" was necessary. Even in hindsight, defendant cannot articulate what additional jury instructions the Court should have delivered. Her inability to point to any additional appropriate instruction further demonstrates that counsel's performance was reasonable.

Finally, a review of the entirety of defense counsel's closing argument demonstrates that defense counsel's tactical decision not to challenge Bertelli's status as a vulnerable victim was a reasonable one. The evidence well demonstrated that Bertelli was elderly and unwell. Moreover, defendant had testified that she sometimes signed documents for Bertelli because of his poor health. Accordingly, if defense counsel were to challenge that Bertelli was elderly and in poor health at the time of defendant's offense, he would not only have lost credibility with the jury but also would have made an argument that was contrary to one of defendant's defenses.

Defendant also cannot satisfy the second prong of <u>Strickland</u> because she cannot establish that she suffered any prejudice as a result of her counsel's purported missteps. As set forth above, there was and could be no dispute at trial that Bertelli was vulnerable. Therefore, if the jury concluded that Bertelli was a victim of defendant's fraud, it necessarily would have concluded that he was vulnerable, even if defense counsel performed exactly as defendant now wishes he had.

More importantly, the unique procedural posture of this case

16

makes it impossible for defendant to demonstrate prejudice.
Defendant was initially sentenced during the brief period of time
when United States v. Ameline, 376 F.3d 967 (9th Cir. 2004)
("Ameline I") was the law of the Circuit, and the government was
required to prove sentencing enhancements beyond a reasonable
doubt.   However, following the initial sentencing hearing,
Ameline I was withdrawn on rehearing en banc and the Booker
decision was issued.   See Ameline I, 376 F.3d 967, reh'g granted,
400 F.3d 646 (9th Cir. 2005), withdrawn on grant of reh'g en
banc, 401 F.3d 1007 (9th Cir. 2005).   Booker made clear that
sentencing enhancements do not have to be proven to a jury beyond
a reasonable doubt.   United States v. Booker, 543 U.S. 220
(2005).   District courts retain the authority to find
enhancements based upon a preponderance of the evidence standard.
Accordingly, the jury's finding regarding the vulnerable victim
enhancement was irrelevant to defendant's ultimate sentence.   The
authority rested with this Court to sentence defendant based upon
its findings.   Here, the Court not only stated at the initial
sentencing hearing that it concluded Bertelli was vulnerable, but
it specifically concluded during the Ameline remand that a 15-
month sentence was appropriate in light of the factors set forth
at 18 U.S.C. § 3553(a) factors.   In this circumstance, the record
well establishes that defendant in fact suffered no prejudice as
a result of her lawyer's conduct at sentencing.[6]

_____

[6]Defendant additionally claims that the Court "instructed
the jury that the government did not have to prove that
[defendant] actually committed the crime -- but that it was

17

2.  *Cross-Examination of Chavez and Sanford*

Defendant next complains that during trial, her counsel failed adequately to cross-examine Chavez and Sanford.  Chavez testified as a custodian of records, in order to authenticate bank documents that demonstrated that on August 20, 2000, $36,441 was wired from Capital Partners's Bank of Stockton account into defendant's Wells Fargo Bank account.  Under Fed. R. Evid. 902(11), the documents introduced by Chavez were self-authenticating and the government could have, if it chose, admitted them without Chavez's testimony.  See Fed. R. Evid. 902(11).  Sanford testified that the August 20, 2000 wiring traveled interstate, through New Jersey.

The bank documents speak for themselves.  As with most wire fraud cases, the fact that money moved from one place to another, and that such movement was implemented by interstate wire, should not have been a controversial issue at trial.  There was simply no evidence to rebut the existence of the interstate wiring. Under the circumstances, defense counsel's cross-examination of the witnesses was reasonable.  Even if defense counsel had spent more time cross-examining the witnesses, there is no possibility, much less a reasonable probability, that the jury could conclude

sufficient if she merely thought of doing it."  (Def's Mot. 12).
Defendant has failed to support her contention with a citation to
the record.  The government's review of the transcript indicates
that the Court never delivered any such instruction to the jury.

18

1  that the wiring at issue in this case did not travel interstate.[7]

2                      3.  *Defendant's Testimony*

3        Defendant next contends that her counsel was ineffective in

4  permitting her to testify and subjecting her to cross-

5  examination.  The precise nature of defendant's claim, however,

6  is not clear.  In her motion, defendant claims that counsel

7  should have prevented her from testifying at trial.  At the same

8  time, she also complains that counsel did not elicit enough

9  information from her on direct.  (Def's Mot. 16-17).  As to

10  defendant's complaint that her counsel should not have permitted

11  her to testify, defendant ignores that a defendant has a due

12  process right to testify in her own defense.  See Rock v.

13  Arkansas, 483 U.S. 44 (1987).  Moreover, it is the defendant who

14  "has the ultimate authority to make certain fundamental decisions

15  regarding the case, as to whether to plead guilty, waive a jury,

16  testify in his or her own behalf, or take an appeal." Jones v.

17  Barnes, 463 U.S. 745, 751 (1983) citing Wainwright v. Sykes, 433

18  U.S. 72, 93 n.1 (1977).  Here, defendant has failed specifically

19  to articulate how counsel, in permitting defendant to exercise

20  her Fifth Amendment right to testify, was ineffective.  Defendant

21  _____

22        [7]Defendant suggests that if Capital Partners paid defendant
   by check, no interstate wires could have been used to further her
23  scheme.  (See Def's Mot. 15).  This argument is without merit.
   First, there was no dispute at trial that $36,441 was wired from
24  Capital Partners' bank account, interstate, to defendant's bank
   account.  Moreover, even if Capital Partners had sent defendant a
25  check instead, defendant's argument would fail if the funds were
   subsequently wired from one bank to another, interstate.  See
26  e.g. United States v. Wolfson, 634 F.2d 1217, 1220 (9th Cir.
   1980) (interstate telephone calls to fictitious bank by victim
27  who received worthless check, were within wire fraud statute).

28                                  19

does not assert (much less support with a declaration or other
form of evidence) that her counsel forced her to testify, failed
to advise her of her Fifth Amendment privilege against self-
incrimination, or failed to discuss with her the potential
ramifications of testifying.[8]  Accordingly, defendant has not
established that her counsel's performance was deficient.

     As to defendant's complaint that counsel should have
elicited from defendant additional alleged facts, again defendant
has failed to support her assertions with any evidence.  The
government submits that no such evidence exists.  For instance,
defendant contends that her counsel should have elicited from
defendant that the FBI case agent and the prosecutors on the case
"were the very same group of governmental officials which had by
now federalized and seized DeNova's and Mr. Cole's assets."
(Def's Mot. 10).  As far as the government is aware, neither the
U.S. Attorney's Office nor the FBI ever seized DeNova or Cole's
assets.  Defendant also criticizes her counsel for failing to
elicit during her testimony that defendant was expected to
"testify against the [U.S. Attorney's Office] in an upcoming
administrative hearings for the illegal search and seizure of

_____

     [8]Because defendant has failed to present any evidence that
needs to be rebutted, the government has not sought additional
information from defense counsel.  As set forth above in footnote
3, if the Court determines that additional information is
necessary to adjudicate defendant's claim, the government
respectfully requests that the Court find a limited waiver of the
attorney-client privilege and permit the government to submit a
filing setting forth procedures for implementing the waiver and
requesting a briefing schedule for further addressing the
defendant's claims.

several properties and businesses as well as abuse of authority
and trust under the Superfund laws." (Def's Mot. 17). The
government is not aware of any such administrative hearing or any
allegation regarding the legality of any search or seizure
conducted in connection with this case. Defendant further
suggests that she would have prevailed at trial had counsel
elicited that the prosecutors and the FBI agent were "then being
investigated by the Inspector General and several congressional
committees." (Def's Mot. 17). Once again, the government is not
aware of any such investigation. Defense counsel's failure to
elicit false testimony cannot be deemed objectively unreasonable
under the circumstances. To the contrary, had defense counsel
elicited what he would have known to be perjured testimony, he
would have been acting unethically. See Rule 5-200 of Cal. Rules
of Professional Conduct.

Defendant also cannot demonstrate that had defense counsel
elicited any of her purported facts that the jury would have
acquitted her of the charges. The evidence of defendant's guilt
was overwhelming. Defendant told Capital Partners that Bertelli
had personally guaranteed a debt to DeNova. Defendant then
submitted certain documents to Capital Partners, which she stated
had been signed by Bertelli. In return, defendant received
$36,441. At trial, Bertelli testified that he had never
guaranteed any debt to DeNova and had not signed any of the
documents that defendant had submitted to Capital Partners.
Defendant admitted to the FBI and the grand jury that she had

21

1  signed Bertelli's name to certain documents.  Even without

2  defendant's testimony, the evidence well established defendant's

3  guilty.  Accordingly, defendant has not met her burden of proving

4  that her counsel's alleged failures with regard to her testimony

5  "so undermined the proper functioning of the adversarial process

6  that the trial cannot be relied upon as having produced a just

7  result."  Denham v. Deeds, 954 F.2d at 1505.

8                              4.  *Signed Copy of Indictment*

9          Finally, defendant contends that her counsel was ineffective

10 because he "failed to raise the failure of the Government to

11 produce any indictment ever signed by the Grand Jury foreman as a

12 complete defense to the charges, as mandated by Fed. R. Crim.

13 Proc. 6(c)."  (Def's Mot. 17).  A signed copy of the first

14 superseding indictment was filed with the clerk.  (CR CR 52;

15 attached Exhibit A).  There is no legal support for defendant's

16 argument that the government was required to provide her with a

17 signed copy of the indictment and that her counsel was

18 ineffective in failing to insist that it did so.  See White v.

19 Sanford, 142 F.2d 429, 430 (5th Cir. 1943) (where the original

20 indictment was signed by the grand jury foreperson, defendant was

21 not entitled to release on writ of habeas corpus despite

22 defendant's possession of an unsigned copy of the indictment).

23 Accordingly, defendant can neither demonstrate that her counsel's

24 failure to demand a signed copy of the indictment was objectively

25

26

27

28                                    22

1  unreasonable or that she suffered any prejudice as a result.[9]

2                                    IV.

3                                CONCLUSION

4       For the reasons stated above, the government requests that

5  this Court deny defendant's motion.

6  Dated: February 3, 2010          Respectfully submitted,

7                                   GEORGE S. CARDONA
                                    Acting United States Attorney
8
                                    CHRISTINE C. EWELL
9                                   Assistant United States Attorney
                                    Chief, Criminal Division
10

11                                  _____
                                    DOROTHY C. KIM
12                                  Assistant United States Attorney

13                                       Attorneys For Plaintiff
                                         United States of America
14

15

16

17

18

19

20

21

22

23

24

25  _____

26       [9]At pages 19 to 22 of her motion, defendant complains about
    the pace of her pending second appeal.  Given the Court of
    Appeals's denial of her second appeal, defendant's complaints are
27  now moot.

28                                   23

<u>CERTIFICATE OF SERVICE</u>

I, **Georgina Moreno,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**

**service was:**

[ ] Placed in a closed        [**X**] Placed in a sealed
envelope, for collection      envelope for collection and
and interoffice delivery      mailing via United States Mail,
addressed as follows:         addressed as follows:

[ ] By hand delivery          [ ] By facsimile as follows:
addressed as follows:

[ ] By messenger as follows: [ ] By federal express as follows:

**Ronald Gold**
**Oldman, Cooley, Leighton, Sallus, Gold & Birnberg**
**16133 Ventura Blvd., Penthouse, Suite A**
**Encino, CA 91436-2408**

This Certificate is executed on **February 3, 2010** at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
GEORGINA MORENO