FILED
CLERK, U.S. DISTRICT COURT

JUL 2 8 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2004 Grand Jury

UNITED STATES OF AMERICA, )        CR 04-374(A)-SJO
                          )
              Plaintiff,  )        F I R S T
                          )        S U P E R S E D I N G
         v.               )        I N D I C T M E N T
                          )
RITA MARIE LAVELLE and     )
ROBERT VIRGIL COLE,        )       [18 U.S.C. § 1343: Wire Fraud;
                          )        18 U.S.C. § 2(b): Causing an
              Defendants.  )       Act to Be Done; 18 U.S.C.
                          )        § 1001(a)(2): False Statement]
                          )

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1343 and (2)(b)]

A.    INTRODUCTION

At all times relevant to this Indictment:

1.    Defendant RITA MARIE LAVELLE and her partner owned and operated a business known as NuTECH Enterprises, Inc. ("NuTECH"). NuTECH was located at 4749 Oceanside Boulevard, Oceanside, California. NuTECH operated as an environmental consulting business.

//

DCK/JOJ:dck

2. Defendant ROBERT VIRGIL COLE and his partner owned and operated a business known as DeNova Environmental, Inc. ("DeNova"). DeNova was located at 2824 North Locust Avenue, Rialto, California. DeNova operated as a hazardous waste storage facility.

3. Lemco Corporation ("Lemco") was a client of NuTECH. Joseph Bertelli owned and operated Lemco.

4. Capital Partners USA, Inc. ("Capital Partners") was a company that managed clients' accounts receivables and provided loans to clients. Capital Partners would advance monies to clients in exchange for the right to collect the clients' accounts receivables. This sort of transaction typically is referred to as "factoring." DeNova was one of Capital Partners' clients.

5. Bank of Stockton was a federally-insured financial institution.

6. Wells Fargo Bank was a federally-insured financial institution.

7. The Federal Reserve Bank routed all wire transfers from one bank to another through its offices in East Rutherford, New Jersey.

B. SCHEME TO DEFRAUD

8. Beginning on or before August 20, 2000, and continuing to in or around December 2000, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAVELLE and COLE, and others known and unknown to the Grand Jury, knowingly devised, participated in, and executed a scheme and artifice to defraud, and to obtain money and property by means of

2

25

1  materially false and fraudulent pretenses, representations, and
2  promises, and the concealment of material facts.

3        9.    The fraudulent scheme was carried out by defendants
4  LAVELLE and COLE, and others known and unknown to the Grand Jury,
5  in the following manner:

6           a.    Defendants LAVELLE and COLE would agree with each
7  other to obtain money for defendant LAVELLE and NuTECH from
8  Capital Partners in order to satisfy a debt that defendant COLE's
9  company, DeNova, owed to defendant LAVELLE's company, NuTECH.
10 Defendants LAVELLE and COLE would agree to make false statements
11 and representations to Capital Partners in order to obtain that
12 money.

13          b.    Defendant COLE would falsely represent to a
14 Capital Partners employee that Lemco had agreed to pay DeNova
15 approximately $52,000 for removal and storage of hazardous waste,
16 whereas, in truth and in fact, as defendant COLE well knew, there
17 was no such agreement.

18          c.    Defendant COLE would attempt to persuade a Capital
19 Partners employee to have Capital Partners loan DeNova
20 approximately $36,000 in exchange for the right to collect on the
21 approximate $52,000 that Lemco purportedly owed to DeNova.
22 Defendant COLE would have the $36,000 sent directly to defendant
23 LAVELLE and NuTECH.

24          d.    Defendants LAVELLE and COLE would create a false
25 purchase order that made it appear that Lemco owed DeNova
26 approximately $52,000 for removal and storage of hazardous waste,
27 whereas, in truth and in fact, as defendants LAVELLE and COLE
28 well knew, Lemco owed no such debt.  Defendants LAVELLE and COLE

1  would send the false purchase order to Capital Partners.

2         e.   Defendant LAVELLE would falsely represent to a

3  Capital Partners employee that Lemco's owner, Joseph Bertelli,

4  would personally secure a loan from Capital Partners to DeNova

5  based on a purported payment of $52,000 from Lemco to DeNova.

6         f.   Defendants LAVELLE and COLE would cause Capital

7  Partners to approve a loan of approximately $36,000 to DeNova and

8  forward the loan proceeds to NuTECH's bank account.

9  C.   EXECUTION OF SCHEME TO DEFRAUD

10       To carry out the fraudulent scheme, defendants LAVELLE and

11 COLE, and others known and unknown to the Grand Jury, engaged in

12 and caused others to engage in the following fraudulent and

13 deceptive acts, practices and devices, among others:

14       10.  On or about August 20, 2000, defendant LAVELLE wrote to

15 defendant COLE and others known to the Grand Jury, and stated

16 that DeNova owed NuTECH approximately $85,000, which NuTECH would

17 discount to approximately $35,000 if DeNova were able to promptly

18 pay the amount.

19       11.  On or about August 23, 2000, defendant COLE falsely

20 stated in writing to an employee of Capital Partners that Lemco

21 owed DeNova over $50,000.  On behalf of DeNova, defendant COLE

22 sought a loan from Capital Partners for approximately seventy

23 percent of the value of the amount that Lemco purportedly owed to

24 DeNova, namely, approximately $36,000.

25       12.  On or about August 23, 2000, defendant COLE falsely

26 stated to a Capital Partners employee that defendant LAVELLE

27 would be able to obtain certain guaranties regarding the

28 purported over $50,000 debt from Lemco to DeNova.

4

13. On or about August 28, 2000, defendant LAVELLE made the following false oral and written statements to an employee of Capital Partners: that her client, Lemco, owed approximately $52,130 to DeNova pursuant to a purchase order; that the owner of Lemco, Joseph Bertelli, had agreed to personally secure the purchase order; and that Joseph Bertelli had signed certain documents, including a Continuing Guaranty and Waiver, a Credit Application and Bank Information Release, a Security Agreement, and a purchase order.

14. On or about August 28, 2000, defendant LAVELLE sent by facsimile transmission to Capital Partners a Continuing Guaranty and Waiver, a Credit Application and Bank Information Release, a Security Agreement, and a purchase order, each of which bore the forged signature of Joseph Bertelli.

15. As defendant LAVELLE well knew, Lemco did not owe $52,130 to DeNova, Joseph Bertelli had not agreed to secure the fraudulent purchase order, and Joseph Bertelli had not signed the documents that bore his forged signature.

16. On or about August 29, 2000, defendant COLE submitted a document to Capital Partners that falsely certified that Lemco owed DeNova $52,130 for merchandise sold and delivered or for work and labor done and accepted.

17. As defendant COLE well knew, Lemco did not owe DeNova $52,130.

18. On or about August 30, 2000, DeNova obtained a loan for $36,441 from Capital Partners.

19. On or about August 30, 2000, defendants LAVELLE and COLE caused the amount of the loan, namely, $36,441, to be wire

5

28

1  transferred from Capital Partners' Bank of Stockton account to
2  NuTECH's Wells Fargo Bank account, number 0221592199.

3      20.   In or around November 2000, defendant LAVELLE asked
4  Capital Partners to delay collecting from Joseph Bertelli and
5  Lemco the amount purportedly due on the forged purchase order.
6  Defendant LAVELLE stated that Lemco was having difficulty paying
7  the amount due on the purchase order because of delays in
8  obtaining certain loans.  In fact, Lemco had not paid the
9  purported amount due because there was no valid purchase order
10  and Lemco did not owe DeNova the $52,130 debt.

11      21.   Sometime after November 13, 2000, defendant LAVELLE
12  told Joseph Bertelli that he should not worry about a collection
13  notice that he had received from Capital Partners.  Defendant
14  LAVELLE also told Joseph Bertelli that she would handle the
15  matter.

16  D.    USE OF THE WIRES

17      22.   On or about August 30, 2000, in Los Angeles County,
18  within the Central District of California, and elsewhere,
19  defendants LAVELLE and COLE, and others known and unknown to the
20  Grand Jury, for the purpose of executing and attempting to
21  execute the above-described scheme to defraud, caused, and aided
22  and abetted the transmission of $36,441 from Capital Partners'
23  Bank of Stockton account, in Stockton, California, through
24  Federal Reserve Bank, in East Rutherford, New Jersey, to
25  NuTECH's Wells Fargo Bank account, number 0221592199, in
26  Oceanside, California, by means of wire.

27

28

29

E.   <u>ADDITIONAL ALLEGATIONS</u>

    23.   The Grand Jury further alleges with respect to the scheme described above and the offense charged in count one:

        a.   The loss from the offense was more than $30,000;

        b.   Defendants LAVELLE and COLE knew and should have known that at least one victim of the offense was unusually vulnerable due to: (i) the victim's age and (ii) the victim's physical condition, including that the victim had cancer.

7

COUNT TWO

[18 U.S.C. § 1001(a)(2)]

24.  The Grand Jury repeats and realleges paragraphs 1 through 21 of this Indictment as if fully set forth herein.

25.  On or about October 17, 2002, in Los Angeles County, within the Central District of California, defendant RITA MARIE LAVELLE did knowingly and willfully make a materially false statement concerning a matter within the jurisdiction of the executive branch of the United States, namely, the Federal Bureau of Investigation ("FBI").  Specifically, defendant LAVELLE represented in writing to a Special Agent of the FBI, in substance, that she did not give Capital Partners any documents until after Capital Partners had sent an invoice to Joseph Bertelli demanding payment, whereas, in truth and in fact, as defendant LAVELLE well knew, that representation was false, in that defendant LAVELLE had submitted numerous false and fraudulent documents to Capital Partners before Capital Partners sent an invoice to Joseph Bertelli demanding payment.

COUNT THREE

[18 U.S.C. § 1001(a)(2)]

26.   The Grand Jury repeats and realleges paragraphs 1 through 21 of this Indictment as if fully set forth herein.

27.   On or about October 17, 2002, in Los Angeles County, within the Central District of California, defendant RITA MARIE LAVELLE did knowingly and willfully make a materially false statement concerning a matter within the jurisdiction of the executive branch of the United States, namely, the Federal Bureau of Investigation ("FBI").  Specifically, defendant told a Special Agent of the FBI that when she received money from Capital Partners, she did not know which account receivable of DeNova Capital Partners was "factoring" as part of the transaction, whereas, in truth and in fact, as defendant LAVELLE well knew, that statement was false, in that defendant LAVELLE knew that the

//

//

9

1  money that she received from Capital Partners represented a loan
2  secured by a false purchase order that defendant LAVELLE had
3  submitted to Capital Partners and which bore the forged signature
4  of Joseph Bertelli.

5                                            A TRUE BILL

6

7

8                                    Foreperson

9  DEBRA W. YANG
   United States Attorney
10

11

   STEVEN D. CLYMER
12 Special Assistant United States Attorney
   Chief, Criminal Division
13

14

   JOSEPH O. JOHNS
15 DOROTHY C. KIM
   Assistant United States Attorneys
16 Environmental Crimes Section

17

18

19

20

21

22

23

24

25

26

27

28

                                10

                                33