UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

- - - - - -

THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

THE UNITED STATES OF AMERICA,     )
                                  )
                                  )
                 PLAINTIFF,       )
VS.                               )   CR 04-374(A)-SJO
                                  )
RITA MARIE LAVELLE,               )
                                  )
                 DEFENDANT.       )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

WEDNESDAY, SEPTEMBER 22, 2004

VOLUME II OF V

DEBORAH K. GACKLE, CSR, RPR
Official Court Reporter
U.S. District Court
312 North Spring Street
Room 402-A
Los Angeles, CA  90012
(213) 620-1149

34

```
                              I N D E X

GOVERNMENT'S WITNESSES:    DIRECT    CROSS    REDIRECT    RECROSS

    BERTELLI, JOSEPH         59       69        73          74

    CHAVEZ, CYNTHIA          76       91        --          --

    BIREN, PAUL              96       99       104         106

    KELLY SANFORD           107       --        --          --

    BAKER, KAREN            110      113        --          --

    WALDEN, SEAN            119      146       201         204


                            E X H I B I T S

GOVERNMENT'S                                    RECEIVED:

20 - D                                              63
57                                                  76
58                                                  76
78                                                  87
82                                                  97
75                                                 108
 7                                                 123
11                                                 127
19                                                 130
22                                                 136
26                                                 138
30                                                 140
32                                                 141
39                                                 143
40                                                 143
41                                                 143
42                                                 143
37                                                 143
                                                   188


DEFENSE

101                                                 82
                    - - - - -
```

1  Mr. Bertelli's niece will be allowed in the courtroom. These
2  are special, exceptional circumstances. I want to make it
3  clear for the record that Mr. Bertelli has significant
4  impairments. He is here in a wheelchair. I want to make sure
5  he is as comfortable as possible. I want to make sure we
6  provide all assistance to him so that the jury is able to hear
7  precisely the question asked by counsel but, more importantly,
8  the response by Mr. Bertelli. Because of his impairments,
9  additional assistance is going to be required to allow
10 co-counsel the opportunity to approach him to provide the
11 document close him, so he can read any document at issue.
12     MR. JOHNS: I would note for the record, that the
13 court interpreter -- excuse me -- court reporter has asked me
14 that if an answer is not clear, for me to -- and I understand
15 the answers, to rephrase it, almost like a leading question, in
16 a "Yes" or "No" to make sure the record is clear. I'm giving
17 the court advanced notice that, on occasion, I may rephrase or
18 I may repeat his answer to make sure we have it right.
19     THE COURT: Let's bring his niece in, please.
20     I'm waiving my hand, Mr. Bertelli. Mr. Bertelli, can
21 you hear me?
22     THE WITNESS: Yes.
23     THE COURT: Your niece is here. She will be close
24 by. If at any point in time you need to stop the proceedings
25 or you need her assistance, please alert the Special Agent so

*U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA*

```
 1  that the court can be informed, and we can stop the
 2  proceedings.
 3          THE WITNESS:  Okay.
 4          THE COURT:  Let me also, before we bring the jury in,
 5  Mr. Bertelli will be sworn.  The court is not going to require
 6  Mr. Bertelli to raise his right hand.  I believe he would have
 7  significant difficulty doing that.  But the oath will be given
 8  to Mr. Bertelli without the requirement that he raise his right
 9  hand.
10          MR. JOHNS:  Thank you.
11          THE WITNESS:  I didn't think I was that bad that I
12  couldn't raise my hand.
13              (Open Court - Jury Present)
14          THE COURT:  The record should reflect that the jury
15  is again present, with alternates.  The parties and counsel are
16  present.  Would you have a seat, please.
17          The government will call their first witness.  Their
18  first witness is in the courtroom, Mr. Bertelli.  Mr. Bertelli
19  has significant physical impairments.  He is in a wheelchair.
20  He will not be able to take the witness stand during his
21  examination.
22          He will not be able to raise his right hand when he
23  is sworn in.  The clerk will perform the oath.  Mr. Bertelli
24  has been excused from raising his right hand if he can't do so
25  because of his physical condition.
```

| | | |
|---|---|---|
| 1 | Q. | Mr. Bertelli, how old are you? |
| 2 | A. | Going on 84 and a half. |
| 3 | Q. | Mr. Bertelli, did you have cancer at one point? |
| 4 | A. | Yes. |
| 5 | Q. | Was it mouth cancer? |
| 6 | A. | Uh-huh. |
| 7 | Q. | Is that a "Yes"? |
| 8 | A. | Yes. |
| 9 | Q. | And did you have surgery to remove the mouth cancer? |
| 10 | A. | Yes. |
| 11 | Q. | And you had that surgery before you received the invoice |
| 12 | | from Capital Partners, correct? |
| 13 | A. | Yes. |
| 14 | Q. | That was back in 1999? |
| 15 | A. | Uh-huh. |
| 16 | Q. | Is that a "Yes"? |
| 17 | A. | Yes. |
| 18 | Q. | Mr. Bertelli, at the time L.A. County Fire department was |
| 19 | | ordering you to clean up Lemco, were you in chemotherapy or |
| 20 | | radiation therapy for your cancer? |
| 21 | A. | (Inaudible.) I -- I -- in '98 -- |
| 22 | Q. | You believe you had your chemotherapy in 1998? |
| 23 | | THE NIECE: He had radiation. |
| 24 | BY MR. JOHNS: | |
| 25 | Q. | You had the radiation therapy in 1998? |

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    THE COURT: Please do not assist the witness.
2  BY MR. JOHNS:
3  Q. Mr. Bertelli, do you remember when you had your radiation
4  therapy?
5  A. Radiation therapy --
6     THE COURT: Do not assist the witness in reference to
7  his responses. If he needs other assistance, you can do that.
8     THE WITNESS: Just ask me a question.
9     MR. JOHNS: At this point, Your Honor, the government
10 has no more questions for Mr. Bertelli. We would seek to move
11 Exhibits 20-A through Exhibit 20-F into evidence, sir.
12    THE COURT: Any objection?
13    MR. CEPHAS: Your Honor, I believe several of the
14 documents he hadn't seen.
15    THE COURT: Again, I'd ask counsel, when you first
16 make reference to an exhibit to seek its admission. So we'll
17 start again.
18    Exhibit 20-A has been, I believe, received.
19    MR. JOHNS: That was Exhibit 20-D, Your Honor.
20    THE COURT: Exhibit 20-D has been received. The
21 first exhibit that you're offering is exhibit --
22    MR. JOHNS: Your Honor, it's not important. I will
23 do this through another witness. We don't need to waste time
24 on this.
25    THE COURT: It is not being offered at this time?

1   THE COURT: Fifty-seven and 58 are received.
2   (Government's Exhs. 57 and 58 received in evidence.)
3   **CYNTHIA CHAVEZ, GOVERNMENT'S WITNESS, SWORN, TESTIFIED:**
4   DIRECT EXAMINATION
5   BY MR. JOHNS:
6   Q.   Ms. Chavez, good morning.
7   A.   Good morning.
8   Q.   Could you please state your present occupation and
9   assignment for the members of the jury.
10  A.   I am a paralegal with Wells Fargo law department, defense
11  litigation.
12  Q.   And what are your duties, generally, as a paralegal?
13  A.   Generally assist with gathering documentation for
14  production in litigation; make an appearances such as these as
15  need be; sustain the attorneys with whatever they need.
16  Q.   Could you please take a look at Exhibits -- Exhibit 57 and
17  Exhibit 58.
18  A.   Okay.
19  Q.   Are you familiar with the records contained in Exhibit 57?
20  A.   Yes, I am.
21  Q.   Are you familiar with records contained in Exhibit 58?
22  A.   Yes.
23  Q.   Beginning first with Exhibit 57, taking a look at page one
24  of that exhibit, can you just briefly tell us what page one is.
25  A.   It's a declaration, which there's a couple of boxes

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   checked indicating the signature card of the customer and the
 2   statements.  These are records of Wells Fargo.
 3   Q.  Turning to page two of Exhibit 57, what is shown on this
 4   page?
 5   A.  This is a statement for August of 2000, belonging to
 6   NuTech Enterprises, Inc.
 7   Q.  And is it accurate that the statement covers August 1st
 8   through August 31st of 2000?
 9   A.  Yes.
10   Q.  Turning your attention to the balance information portion
11   of this page.
12           On the far right end of that column, does this record
13   indicate how much money was in NuTech, Inc.'s bank account on
14   the date of August 22nd, 2000?
15   A.  You're looking at page one?
16   Q.  I'm looking at page two.
17   A.  Oh, sorry.
18           August 22nd indicates a balance, yes, zero balance.
19   Q.  That means there was no money in that account?
20   A.  That's correct.
21   Q.  Does this record indicate how much money was in -- strike
22   that.
23           Does this record indicate under the deposits section,
24   the far right-hand side, does it indicate any deposits going
25   into this account on the date of August 30th of 2000?
```

1  A.  Yes.
2  Q.  Again, there are a couple of entries where it says, "Fed
3  wire received."
4      Do you see those?
5  A.  Yes.
6  Q.  That, again, is because those were wire transfers; isn't
7  that right?
8  A.  Yes.
9  Q.  Now, turn to page 834.
10     And do you see the entry for the $36,000 posting
11 under "Deposits, $36,441"?
12 A.  Yes.
13 Q.  It says, "Incoming money transfer credit"?
14 A.  Yes.
15 Q.  Do you see that?
16     No further questions for this witness, Your Honor.
17     THE COURT:  Redirect.
18     MR. JOHNS:  Briefly, Your Honor.
19              REDIRECT EXAMINATION
20 BY MR. JOHNS:
21 Q.  Defense Exhibit 101, turning your attention to, and the
22 entry for August 30th, which you discussed on direct for the
23 $36,441 deposit.
24     Do you see that?
25 A.  Yes.

```
 1              THE COURT:  Page?
 2              MR. JOHNS:  I'm sorry, Your Honor.  Page 834.
 3    Q.   You testified on direct that appeared to you to be a wire
 4    transfer, correct?
 5    A.   That's correct.
 6    Q.   Now, this doesn't say "Fed wire," like the other two
 7    deposits that counsel referred to, does it?
 8    A.   No, it doesn't.
 9    Q.   Does that mean it wasn't a wire transfer?
10              MR. CEPHAS:  Objection, calls for speculation.
11              THE COURT:  If you have personal knowledge, you may
12    answer.  You cannot speculate.
13              THE WITNESS:  I can't answer.
14    BY MR. JOHNS:
15    Q.   Based on what you see here, this appears to be a wire
16    transfer, correct?
17    A.   Yes.
18              MR. CEPHAS:  Same objection.
19              THE COURT:  The objection is sustained.
20              The response is struck.  The jury is ordered to
21    disregard it.  Lacks foundation.
22    BY MR. JOHNS:
23    Q.   Based upon the evidence, based upon the markings in the
24    record on this page associated with the August 30 deposit, can
25    you tell whether or not that was a wire transfer?
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

85

1       MR. CEPHAS: Objection, speculation.

2       THE COURT: That question can be answered "Yes" or

3 "No." Please answer it "Yes" or "No."

4       THE WITNESS: Sorry. Would you repeat that.

5       MR. JOHNS: Yes.

6 Q. Based upon the entry on page 834, for the

7 August 30th deposit, can you tell whether or not that was a

8 wire transfer?

9 A. Based on the entry, it appears to be a wire transfer.

10      MR. JOHNS: Nothing further.

11      THE COURT: Recross.

12      MR. CEPHAS: No, Your Honor.

13      THE COURT: Thank you.

14      The witness is excused. Thank you very much for your

15 testimony.

16      THE WITNESS: Thank you.

17      MR. JOHNS: Your Honor, the government would call

18 their next witness.

19      THE COURT: Yes, please.

20      MR. JOHNS: Bank of America, custodian of records,

21 Rita Wooley.

22      THE CLERK: Good morning, ma'am.

23      (Witness sworn.)

24      THE WITNESS: Yes.

25      THE CLERK: Thank you, ma'am. Please be seated.

*U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA*

1             Next witness.
2             MS. KIM: Your Honor, the government calls Kelly
3    Sanford.
4             THE CLERK: Good afternoon, sir.
5             (Witness sworn.)
6             THE WITNESS: Yes.
7             THE CLERK: Thank you, sir. Please be seated.
8             Sir, for the record, please state and spell your name
9    for the record.
10            THE WITNESS: Kelly Sanford, S-a-n-f-o-r-d.
11            THE CLERK: Thank you.
12            MS. KIM: May I begin, Your Honor?
13            THE COURT: Yes.
14   <u>KELLY SANFORD, GOVERNMENT'S WITNESS, SWORN, TESTIFIED:</u>
15                      <u>DIRECT EXAMINATION</u>
16   BY MS. KIM:
17   Q.  Good afternoon, Mr. Sanford.
18       For whom do you work?
19   A.  The Federal Reserve Bank in Kansas City.
20   Q.  And does the Federal Reserve Bank provide wiring services
21   for its customers?
22   A.  Yes, it does.
23   Q.  Is the Bank of Stockton a customer of the Federal Reserve
24   Bank?
25   A.  Yes, it is.

1  Q.   Is Wells Fargo Bank a customer of the Federal Reserve
2  Bank?
3  A.   Yes, it is.
4  Q.   Can you please look at -- in the file folders to your left
5  is an exhibit marked Government's Exhibit 75.
6           Could you please pull out that exhibit -- actually,
7  the whole folder, if you could.
8           Do you recognize the exhibit?
9  A.   I do.
10 Q.   What is that exhibit?
11 A.   It's a copy of a record -- transaction sent between two
12 finance institutions, both of which are customers of the
13 Federal Reserve.
14 Q.   Did you participate in the obtaining of this exhibit of
15 this printout?
16 A.   My staff did, yes.
17          MS. KIM:  Your Honor, the government offers
18 Exhibit 75 into evidence.  And for the record, it is a
19 printout, a computer printout.
20          MR. CEPHAS:  No objection.
21          THE COURT:  Exhibit 75 is received.
22          (Government's Exhibit 75 received in evidence.)
23          MS. KIM:  May I publish, Your Honor?
24          THE COURT:  Yes.
25 ///

BY MS. KIM:

Q. Mr. Sanford, can you tell from looking at this exhibit whether or not wires moved through East Rutherford, New Jersey?

A. Yes, I can.

Q. How can you tell?

A. The IMAD line, 1120, is actually a unique identifier of that transaction. And that number actually indicates that it has successfully been processed over our federal wire network, which is connected through the East Rutherford facility.

Q. What date did that wire transfer occur?

A. August 30th, 2000.

Q. Who was the sender of the wire or the sender of the money?

A. Bank of Stockton.

Q. Which particular account holder of the Bank of Stockton was the sender of the money?

A. Capital Partners USA, Incorporated.

Q. Mr. Sanford, who was the recipient of the money?

A. The bank that received the funds was Wells Fargo.

Q. And who was the particular account holder at Wells Fargo who received this money?

A. NuTech Enterprises, Incorporated.

Q. Finally, what is the amount of money what was transferred?

A. $36,441.

MS. KIM: Your Honor, the government has no further questions.

1       MS. KIM: Your Honor, the government offers
2  Government's Exhibit 26 into evidence.
3       MR. CEPHAS: No objection.
4       THE COURT: Twenty-six is received.
5       (Government's Exhibit 26 received in evidence.)
6       MS. KIM: May I publish, Your Honor?
7       THE COURT: Yes.
8  BY MS. KIM:
9  Q.  Now, when you say that the customer is assigning a
10 receivable, who is the customer in this instance?
11 A.  I'm sorry. If I said "customer," I am mistaken. I
12 misspoke. It's the client that is assigning this, giving this
13 to us. This was Denova that was assigning this receivable that
14 was due to them by Lemco. They were assigning that receivable
15 to us.
16 Q.  How much is the receivable worth?
17 A.  $52,130.
18 Q.  Can you please flip to the second page.
19      Is that the receivable that they are assigning?
20 A.  Yes, it is.
21 Q.  And that's a Denova invoice, correct?
22 A.  Yes, it is.
23 Q.  Did you ultimately approve of this factor?
24 A.  Yes, I did.
25 Q.  What did you do when you approved this transmittal, this

1  factor?
2  A.   I signed it.
3  Q.   Is that your signature?
4  A.   My signature is at the bottom, yes.
5  Q.   What does this mean, "wire"?
6  A.   That means the form with which -- that we were going to
7  give the money to Denova was going to be by wire transfer at
8  their request.
9  Q.   To be clear, who had sent you these documents page one and
10 two that I'm referring to as Exhibit 26?
11 A.   These are sent by Denova.
12 Q.   Can you please explain to the members of the jury what
13 these numbers here represent. And I'm circling the bottom
14 right-hand portion of the page which references numbers to
15 include 51, 130, and at the bottom, 36,441.
16 A.   This was our section of the document where we summarized
17 the transaction.  In many cases, the documents would have ten,
18 15, 20 different invoices on it.  This is the summary section
19 where I summarized all the invoices.  And then we held back a
20 percent of the receivable, which is the $15,639.  That is the
21 percent that we held back from the $52,130 receivable.  The
22 next line is where we charged a $50 wire fee.  The balance was
23 to be transferred to Denova, for 36,441.00.
24 Q.   Can you please now look at Government's Exhibit 30.
25      Do you recognize that exhibit?

```
 1   A.   Yes, I do.
 2   Q.   What is that exhibit?
 3   A.   This is a request by Bob Cole to wire the money to NuTech.
 4            MS. KIM:  Your Honor, the government offers Exhibit
 5   30 into evidence.
 6            MR. CEPHAS:  No objection.
 7            THE COURT:  Received.
 8            (Government's Exhibit 30 received in evidence.)
 9            MS. KIM:  May I publish, Your Honor?
10            THE COURT:  Yes.
11   BY MS. KIM:
12   Q.   You stated that this is something from Bob Cole?
13   A.   Yes, it is.
14   Q.   Do you see Bob Cole's handwriting on that?
15   A.   Yes, I do.
16   Q.   What is the -- is that his handwriting and is that the
17   handwritten note under, in the middle half of the page?
18   A.   It is what I believed to be Bob Cole's signature and
19   writing.
20   Q.   What did you understand the top written portion of this to
21   be?
22   A.   It appeared to me that it was instructions from NuTech to
23   Bob Cole -- what the wiring instructions were to send the money
24   to Wells Fargo.
25   Q.   Can you please now look at Government's Exhibit 32.
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   Do you recognize that exhibit?
2   A. Yes, I do.
3   Q. What is that exhibit?
4   A. A request to wire transfer money out of our bank account
5   into the bank account of NuTech.
6       MS. KIM: Your Honor, the government offers Exhibit
7   32 as evidence.
8       MR. CEPHAS: No objection.
9       THE COURT: Received.
10      (Government's Exhibit 32 received in evidence.)
11      MS. KIM: May I publish, Your Honor?
12      THE COURT: Yes.
13  BY MS. KIM:
14  Q. Mr. Walden, do you understand the money actually was
15  transferred?
16  A. Yes.
17  Q. How do you know that?
18  A. Because it was taken out of our bank account.
19  Q. And why did you send the money to NuTech?
20  A. It was according to Bob Cole's instructions.
21  Q. Did you have any conversations with defendant that you
22  would be sending the money to NuTech?
23  A. I really don't recall. There were conversations between
24  Bob Cole, Ms. Lavelle and myself, and I don't remember exactly
25  if it was a -- if that was stated in those conversations. But

1  we did get instructions from Bob Cole to do this.
2  Q.   Had you also received wiring information from defendant to
3  wire it to NuTech?
4  A.   Yes.
5  Q.   Now, did Lemco ever pay the $52,000 that it allegedly owed
6  to Denova?
7  A.   No, they didn't.
8  Q.   To be clear, when you factor an account, they should --
9  they, Lemco -- should have paid you the $52,000; is that
10 correct?
11 A.   Yes.  There is a stamp on the receivable that states it's
12 payable to Capital Partners at our bank account.
13 Q.   Now, what, if anything, did you do when the money wasn't
14 paid -- let me back up.
15      When did you think the money should be paid?
16 A.   Reasonably -- within 30 to 45 days is when I expected the
17 money to be paid.
18 Q.   And following 30 to 45 days, did you receive the money?
19 A.   No.
20 Q.   What did you do when you did not receive the money?
21 A.   I began inquiring as to the status of the payment and when
22 it was going to be coming in.  And --
23 Q.   With whom?
24 A.   This conversation is with Bob Cole and also with
25 Ms. Lavelle.

1   THE COURT: The goal is to make sure that Mr. Johns
2   can attend that very important occasion, and we have Ms. Kim,
3   who could remain to handle any issues that would come up with
4   the jury.
5   MR. CEPHAS: Fine. Thank you, Your Honor.
6   THE COURT: Thank you.
7   (Proceedings concluded at 5:25 p.m.)
8   - - - - -

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript from the stenographic record of the proceedings in the foregoing matter.

*Deborah K. Gackle* (signature)   Dec. 27, '04
Deborah K. Gackle                  Date
Official Court Reporter
CSR No, 7106

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA